AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

**FILED**

## United States District Court

| District |

| Name | Prisoner No. | Case No. |
| Douglas Obujen | | |

Place of Confinement

Avenal State Prison

EASTERN DISTRICT COURT

BY

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

Name of Petitioner (include name under which convicted)          Name of Respondent (authorized person having custody of petitioner)

v.

*1:07-CV-1309-AWI-DLB -HC*

The Attorney General of the State of:

### PETITION

1. Name and location of court which entered the judgment of conviction under attack  Santa Clara County Court House.

2. Date of judgment of conviction  May, 2002 (Received 1 year in county and 5 years probation. After a first time technical violation, I was sentenced on Sept 10, 2003 to 6 years in prison.

3. Length of sentence

4. Nature of offense involved (all counts)  I was convicted of a single '288' (lewd act on a student under 14). The act involved a 'hug' only (no touching as groping etc.) The school defended me by stating there was no molestation as sexual overtures made toward the female student.

5. What was your plea? (Check one)
(a) Not guilty  ☑
(b) Guilty  ☐
(c) Nolo contendere  ☐
If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

_____

_____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
(a) Jury  ☑
(b) Judge only  ☐

7. Did you testify at the trial?
Yes ☐  No ☑

8. Did you appeal from the judgment of conviction?
Yes ☑  No ☐

(2)

Also, I received a misdemeanor 'false imprisonment' -
reduced from an alledged felony false imprisonment, by the
the jury since the act involved a second hug, only.
   I was also told, and alleged, by the detective that
I had a collection of pornography, but that was all very
soft-care porn. However, there were about 4 pictures
- taken off the internet - that were speculative as to
being child pornography.

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court    *6th District Court of Appeals.*

(b) Result    *Was finally denied by the Calif State Supreme Ct.*

(c) Date of result and citation, if known    *Also, the length of my sentence*

(d) Grounds raised    *First time technical violation. I accidentally was also appealed, but that was denied too,*

*took the next Expressway Exit but turned around and*

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:
*On the original conviction, I contended that a hug' is not*

(1) Name of court    *an indecent act as would be viewed by an average*

(2) Result    *normal human being.*

*Note: I did not have the money to take the*

(3) Date of result and citation, if known    *appeal to the Federal level.*

(4) Grounds raised

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐ No ☑

11. If your answer to 10 was "yes," give the following information:
(a) (1) Name of court

(2) Nature of proceeding

(3) Grounds raised

(3)

and went back to the highway. However, the detective alleged, because I had trespassed into the 2 mile restricted area from the school - as indicated by a GPS tracking device - I was in violation. My retort was, that it was accidental, and I did - while still on the Expressway - turned around at the stop light and proceeded back to the highway. I then went to the prior turn-off (which I was my intention to take. Also, I contended, that this took place on a weekend - while school was out - and also a holiday. The approx. violation date was March or April of 2003. I was not arrested until 12 days later, when I arranged to meet with the detective of the Palo Alto Police Dept.

AO 241 (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☑

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☐

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.        Yes ☐   No ☐
(2) Second petition,        Yes ☐   No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

*Did not have funds to take it to Federal level.*

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(I) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: The prosecutor used a preemptory challenge to have the court venue changed to a judge ('judge

Supporting FACTS (state *briefly* without citing cases or law) Worthman), who be more favorable to obtaining a conviction. This occurred after the prior judge reduced my bail from $300,000 to $40,000, since I had no prior convictions or had ever been to jail before. Upon arrival at the new court venue, the prosecutor - Gillingham - asked that the bail be raised to $300,000. It was granted

B. Ground two: and my Dad had to pay an additional $13,000 to the $4,000 he had paid prior.

Supporting FACTS (state *briefly* without citing cases or law): Ground 2. A complaint was never made by either the student (alleged victim), or his parents, or any other relative, friend or teacher. A new principal (during summer), who did not know me, reported a strange man was seen on the school grounds. An arrest and investigation suggested that because I was giving favorable attention to a student - who was not doing well in school, that [5] they claimed my real attempt was with a devious approach. However, I was convicted only of a simple 288 felony (a hug), and unfortunately, given a six year sentence.

AO 241 (Rev. 5/85)

C. Ground three: _That the 'hug' must occurred in a school hall well seen by teachers and students._

Supporting FACTS (state *briefly* without citing cases or law): _The 'hug' was also witnessed by Marci Arianno - the educational testing teacher._

D. Ground four: _That my conduct toward students over the entire year that I worked with the Palo Alto School District was not flirty_

Supporting FACTS (state *briefly* without citing cases or law): _in fact, encouraged by the less than exemplary, and was expecting my return in the Fall. Also, the student, one of 18 learning disabled students I worked with, was examined by a psychological examiner, who reported that her (student), made her biggest academic and behavioral gains (student)._

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing _A.J. Kapp (Santa Clara County), and_

(b) At arraignment and plea _A.J. Kapp (Santa Clara County)._

turnaround during the year I worked with her.

AO 241 (Rev. 5/85)

(c) At trial _____

(d) At sentencing _____

(e) On appeal _____ *Brownell (I believe San Jose).*_____

(f) In any post-conviction proceeding _____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐ No ☐    *One felony and 5 misdeameanors approx.*

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☑
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: *Spent 9 months in county*
*(Elmwood, Milpitas, 6 months San Quentin Login Sept 18, 03.*
*Then 2 years at Lancaster, and now 9 months at Avedol, My release date is Aug.*
(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be    *07.*
served in the future?
Yes ☐ No ☑    *I may seek en expungement and also an ex-*
*punishment to "register.*

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed

_____
(date)

_____
Signature of Petitioner

(7)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT  I


San Jose Mercury News Story
            Date:   Aug. 30, 2002

PS
SAN JOSE MERCURY NEWS
FRIDAY
AUGUST 30, 2002



# The Peninsula
## & San Francisco

www.bayarea.com/news

l.a.chung

## Surfing's Duke gets his due on new stamp

It's a long way from here to Waikiki Beach, but for 65-year-old Johnny Rice, who grew up surfing out on the west side of Santa Cruz, Duke Paoa Kahanamoku is ever-present. On Cowells Beach, in the surf break, in the spirit of true water men and women everywhere.

Now, this longtime surfer thinks it's good that the broader public will know of Kahanamoku. Soon.

"It's about time they put a Hawaiian person on a stamp," said Rice, who was a Waikiki beach boy from 1958 to 1961 and became a master surfboard shaper and designer. "There's a lot of things Hawaiian people have done that they don't get credit for."

For only the

# Ex-teacher's aide gets year in jail

## HUGGING AND GIFTS, BUT NO OVERT ACT, JUDGE EXPLAINS

**Santa Clara County Superior Court Judge Diane Northway** said the former Walter Hays school tutor was obsessional and did not seem to grasp that he had done anything wrong.

**By Sean Webby**
*Mercury News*

A former Palo Alto teacher's aide who showered a fourth-grade girl with Valentine's Day cards and dresses and once hugged and kissed her on the head in a private classroom was sentenced Thursday to a year in county jail.

Douglas Obujen, who turned 56 the day he was sentenced, had faced eight years in state prison. Santa Clara County Superior Court Judge Diane Northway ex-

plained her sentence by saying that Obujen's crimes did not involve an overt and serious sexual act. But she said she shared prosecutor Chuck Gillingham's stated concern in court that Obujen was obsessional and did not seem to grasp that he had done anything wrong.

"I don't know what reality Mr. Obujen is operating in, but it's not the same one I operate in or the rest of us operate in," Northway said. She urged him to work hard

with counselors to deal with his problematic behavior.

Obujen, wearing the brown-and-green uniform that Santa Clara County Jail uses for those in protective custody, said nothing at the sentencing. Neither the young girl, who testified at his trial, nor her parents were there.

Since there was no rape or overt sexual molestation, the unusual case hinged on Obujen's mental state during the time he followed her around school and hugged her in a private teaching room. Obujen was found guilty of a series of lewd acts on a child under the age of 14.

*See* **SENTENCE,** *Page 8B*

See SENTENCE, Page 8B

RESIDENCY DISCOURAG FOR RAVENS

M
to 
scl
ra

By Sa
Merc

A Ravens-oo
trict board 
day that he late
the race and lite
November Ballo
arose about th
claim to being
resident.

The San Mate
Attorney's Offic
week that Lelan
a vacant lot in E
he listed as his s
er registration
forms.

"I knew immediately I was going to hit the car. It was maybe 10 feet in front of me. There was nothing I could do."

EXHIBIT   II

School Attorney's Defend Obujen
                Date:   Aug. 12, 2004

1  LOUIS A. LEONE, ESQ., State Bar No. 099874
2  **STUBBS & LEONE**
   2175 N. California Blvd., Suite 900
3  Walnut Creek, CA 94596-5313
   Telephone:  (925) 974-8600
4  Facsimile:   (925) 974-8601

5
   Attorneys for Defendant
6  PALO ALTO UNIFIED SCHOOL DISTRICT

7

8           SUPERIOR COURT FOR THE STATE OF CALIFORNIA
                   COUNTY OF SANTA CLARA
9                     UNLIMITED JURISDICTION

10  JANE DOE, a minor, by JOHN DOE, her   **CASE NO.  CV 813846**
11  Guardian ad Litem,

12          Plaintiff,          **DEFENDANT PALO ALTO UNIFIED**
                        **SCHOOL DISTRICT'S MEDIATION**
13  vs.                          **BRIEF**

14  DOUG OBUJEN, PALO ALTO UNIFIED   **Date:**     **August 12, 2004**
15  SCHOOL DISTRICT, and ROES 1 to      **Time:**     **1:00 p.m.**
   100, inclusive,                 **Mediator:**  **Hon. Ellen James**
16                                       **JAMS**
17         Defendants.             **100 Pringle Avenue**
                       /      **Walnut Creek, CA 94596**
18

19                    **FACTUAL BACKGROUND**

20      This cause of action for emotional injuries is premised upon the minor-plaintiff's

21  allegations that a former employee of PALO ALTO UNIFIED SCHOOL DISTRICT,

22  defendant DOUG OBUJEN, a resource teacher's aide (a non-certificated position) at

23

24  her elementary school, inappropriately kissed her on top of the head, hugged her, gave

25  her presents and followed her both on and off campus during the 2000-2001 school

26  year.  Plaintiff alleges this conduct constituted assault, battery, harassment, stalking

27

28

   DEFENDANT PALO ALTO UNIFIED SCHOOL DISTRICT'S        1
   MEDIATION BRIEF

1   and false imprisonment.  As a result of OBUJEN's conduct[1], plaintiff allegedly suffered

2   severe emotional distress and required psychiatric care.  Plaintiff's theory of liability

3
    against the DISTRICT is respondeat superior and negligent supervision.
4

5           By plaintiff's own admissions, OBUJEN's attentions toward her were always

6   done outside the presence of school officials.  In December of 2000, after plaintiff's

7   mother advised the school principal that OBUJEN had appeared unannounced at the

8   family home bearing gifts consisting of two dresses for the plaintiff, he was repri-
9
    manded for not respecting student boundaries.  OBUJEN's explanation, however, was
10

11  that he wanted to do something nice for the plaintiff, a special ed student, who had

12  done well that semester.  Although plaintiff's own mother did not believe her daughter

13  was in any danger and only advised school officials that she thought the gifts were

14
    overly extravagant, OBUJEN was re-assigned and no longer assisted plaintiff in one-
15

16  on-one tutoring.

17          Five months later, the DISTRICT learned from plaintiff's mother that OBUJEN

18  had appeared at an off-campus children's library and played a board game with

19
    plaintiff and her friends.  DISTRICT personnel again reprimanded OBUJEN and
20

21  advised him that it was inappropriate to socialize with students off campus without

22  parental permission.

23          OBUJEN's contract with at the school site ended at the conclusion of the school

24  year.  Thereafter, he attempted to make contact with the plaintiff at her summer school

25
    site.  The DISTRICT then learned that OBUJEN had surreptitiously given plaintiff gifts
26

27

28          [1]OBUJEN did not sexually molest the plaintiff, nor make any sexual overtures to her.

1

## C.    Negligence of Others.

2

At no time prior to OBUJEN's arrest and conviction did plaintiff or her mother

3

advise anyone at the DISTRICT that OBUJEN was a danger to plaintiff or constituted a

4

5 threat to the plaintiff.   Plaintiff has admitted that she found OBUJEN annoying but

6 never told anyone, including teachers she liked and with whom she felt comfortable,

7 that she was scared of OBUJEN or that he made her feel uncomfortable.  Nor did she

8

9 relay any such feelings to her friends, her siblings, or her parents.   Plaintiff's own

10 mother admitted to the police that she had not thought OBUJEN was dangerous.

11                                        **DAMAGES**

12 **Emotional Injuries**

13

14 Plaintiff was not seen by any counselor or therapist until _after_ she testified at the

15 criminal trial of OBUJEN in May of 2002, or more than one year post-incident.  Accord-

16 ing to plaintiff, she was made to go to counseling at the insistence of her parents.

17 Prior to counseling, plaintiff contends that she had simply forgotten about OBUJEN.

18 She was seen five times by Carol Walsh, Ph.D.  Billing totals $890.00.

19

20 Plaintiff's school performance has improved, in that she is no longer receiving

21 one-on-one tutoring, and her academic performance is average to above-average in all

22 subject matters.  Although it has been represented that plaintiff missed school due to

23 "fear" of the school environment, records do not corroborate such a representation in

24

25 that plaintiff missed one day the semester following the conclusion of OBUJEN's

26 criminal trial, conviction and sentencing.

27

28

1

**Settlement Negotiations**

2

3 The parties have not engaged in any settlement discussions or negotiations, to

4 date.    Defendant has requested a settlement proposal from the plaintiff's attorney, and

5 one has yet to be provided.

6      Dated: August 4, 2004            STUBBS & LEONE

7

8

9      MARINA B. PITTS, ESQ.
       Attorneys for Defendant
10     PALO ALTO UNIFIED SCHOOL DISTRICT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT   III

Psychological Examiner notes
Academic Success in all areas of study
throughout Jane Doe's 4th grade year

                    Date:   3-08, 3-22

*CONFIDENTIAL REPORT*

**Palo Alto Unified School District**
**Department of Student Services**
**25 Churchill Avenue**
**Palo Alto, CA 94306**

## PSYCHOEDUCATIONAL EVALUATION

| | |
|---|---|
| **Name:** Kirsten Atkinson | **School:** Jordan Middle School |
| **Grade:** 7 | **Teacher:** Joleen Roach |
| **Evaluation Date(s):** 03/08, 03/22/04 | **Initial    Triennial    Other_____** |
| **Birth Date:** 09/27/91 | **Examiner:** Wesley Cedros, Ed.S. |
| **Chronological Age:** 12-5 | School Psychologist |

### REASON FOR REFERRAL
This evaluation was completed as part of Kirsten's three-year Special Education reappraisal process. This report is only one component of the triennial reappraisal process and will be considered in conjunction with other data from parents, teachers, administrators and other specialists to determine whether Kirsten remains eligible for special education services.

### ASSESSMENT TECHNIQUES:
Wechsler Intelligence Scales for Children, 4th Edition (WISC-IV)
Test of Auditory-Perceptual Skills – Upper Level (TAPS-UL)
Test of Visual-Perceptual Skills – Upper Level (TVPS-UL)
Parent Health & Development Survey
Teacher Interview
Student Interview
Observation
Review of Records

### BACKGROUND INFORMATION
**Review of Records**
Kirsten is currently in the 7th grade class at Jordan Middle School. Kirsten's cumulative school folder revealed that she has been enrolled in Palo Alto Unified School District since 08/96. She has never been retained. Records also indicate that Kirsten has no history of significant attendance or discipline problems that would have a negative effect on her academic performance.

Kirsten was initially made eligible for Special Education services as a student with a Specific Learning Disability in the 1st grade at Walter Hays. At that time, reading comprehension was a major concern. Psycho-educational testing found overall cognitive functioning in the High Average range with higher nonverbal problem solving skills relative to her ability to solve problems with the use of words. Processing deficits were identified in the areas of auditory processing and attention. Kirsten's triennial evaluation in 4th grade showed significant improvement in all academic areas. Cognitive ability was again judged to be in the High Average range, however, no significant processing deficits were found and there was no longer a significant discrepancy between her cognitive ability and any area of academic achievement. Despite these findings, the IEP Team again found her eligible for Special Education services as a student with a Specific Learning Disability. Currently, Kirsten receives no direct RSP support, but manages to maintain Average to Above Average grades in all classes.

### CULTURAL, ENVIRONMENTAL AND ECONOMIC ISSUES IMPACTING SCHOOL PERFORMANCE
Kirsten's primary language is English, which is also the language spoken by the adults in the home. Her parents are employed and there are no significant economic issues affecting the family at this time. There